THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TIMOTHY BIERMAN et al., Defendants-Appellees.

Fifth District   No. 5—86—0329

Opinion filed December 1, 1987.

John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Wendy B. Porter, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Julia M. Gentile, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

Defendants, Timothy and Diane Bierman, were charged by an information filed March 4, 1986, in the circuit court of Jackson County with unlawful possession of cannabis under section 4(b) of the Cannabis Control Act (Ill. Rev. Stat. 1985, ch. 56½, par. 704(b)) and illegal transportation of alcohol under section 11—502(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—502(a)). Diane Bierman was additionally charged with unlawful possession of a substance containing cocaine under section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1402(b)).

Defendants filed separate motions to quash their arrests and suppress evidence seized in a search of their vehicle. On April 24, 1986, Timothy Bierman's motion was heard.

Sergeant Don Strom of the Carbondale police department testified that he was patrolling an alley at the rear of 515 South Illinois Avenue in Carbondale at approximately 12:30 a.m. on the morning of March 2, 1986, when he noticed a car parked in a nearby parking lot with its windows fogged up. There appeared to be people inside the car, and, since there had been a high incidence of auto burglaries in the area, Strom decided to investigate. He got out of his squad car and approached the passenger door of the vehicle.

As Strom approached, he could tell there was a person in the front passenger seat, another person in the driver's seat and some people in the rear seat. Strom shined his flashlight into the front passenger seat area and observed a woman (later identified as Diane Bierman) who had what looked to him like a rolling paper up to her mouth and appeared to be licking it closed. Strom said the light startled her and she pulled the object down with her left hand and placed it under her left hip.

Strom immediately opened the door of the car. He reached across to where Bierman's hand was underneath her hip, felt a plastic object, which he confiscated, and asked Bierman to get out of the car. Strom said he smelled the odor of cannabis as soon as he opened the door. The object Strom took from Diane Bierman's hand was a small plastic "compact-like" case which contained a white powdery substance Strom believed to be cocaine.

Upon the arrival of other officers, a search of the vehicle was conducted in which officers found pipes in the ashtray and under the driver's seat, rolling papers in the glove box, and "items that appeared to be cannabis" under the driver's seat. No rolling papers were found on Diane Bierman or in the seating area of the car.

On cross-examination, Strom stated he thought at the time that the object in Diane Bierman's hand was a rolling paper, but he could not specifically identify it as such. Strom did not smell marijuana until he opened the car door.

Officer Steve Michaels arrived after Strom had ordered defendants out of the front seat of the car. Three people were still seated in the backseat. Michaels corroborated Strom's recitation of items found in the search of the car.

Defendant Timothy Bierman testified that his sister Diane's hands were in her lap immediately before Strom opened the car door. She was not holding a marijuana cigarette. After ordering defendants to get out of the car, police officers searched the glove box, the trunk and under all the seats. The search was not pursuant to consent.

The court, noting that Strom had acted on mere suspicion after seeing what he thought was a rolling paper in the hands of Diane Bierman, granted defendant Timothy Bierman's motion to quash arrest and suppress evidence. A written order was filed on May 9, 1986.

On May 14, 1986, Diane Bierman's motion was heard and granted based upon the testimony presented at Timothy Bierman's motion hearing. In granting defendant's motion the court stated:

> "The Court is going to enter the same order with regard to the Motion to Suppress Evidence as to Diane Bierman as was entered as to Timothy Bierman previously. The evidence will be suppressed and the same order will apply to Diane Bierman."

On May 20, 1986, the State filed notice of appeal from the orders of May 9 and May 14. On May 22, 1986, a written order was filed in the circuit court granting Diane Bierman's motion. The order was apparently prepared on the initiative of Diane Bierman's attorney.

As a preliminary matter, we note that the court's oral pronouncement on May 14, 1986, granting defendant Diane Bierman's motion to

quash arrest and suppress evidence was an appealable order. The court stated that the order entered previously as to Timothy Bierman would apply to Diane Bierman. This statement indicated that the court did not contemplate entry of a written order, and, from the record, the State had no reason to expect one was forthcoming. Since it is not apparent of record that the State was aware or had reason to believe a written order was to follow the court's pronouncement, the notice of appeal filed by the State on May 20, 1986, vests this court with jurisdiction. *People v. Toolen* (1983), 116 Ill. App. 3d 632, 451 N.E.2d 1364.

The State contends that Sergeant Strom was aware of articulable facts justifying an investigatory stop and that, as part of that stop, Strom was justified in opening the door of defendants' car in order to question defendants or to satisfy himself that there were no weapons present that might compromise his safety. The State argues that once the door was open and Strom smelled cannabis, probable cause to search for cannabis arose. The State points to several facts which would justify Strom's actions: the hour of the day, an area with a high incidence of auto burglaries, defendant Diane Bierman apparently licking a rolling paper closed, and a furtive gesture upon Strom's shining a flashlight in the car.

We reject, as did the circuit court, the notion that Strom was aware of articulable facts which would justify his opening the door of defendants' car. There were no grounds for an investigatory stop.

First, this situation is different from that in *People v. Aldridge* (1981), 101 Ill. App. 3d 181, 427 N.E.2d 1001, in which the defendant was found with a partially undressed woman in a parked car in a deserted alley at 3 a.m. Here defendants were sitting in their car at 12:30 a.m., along with three other people, outside a bar which was open for business and providing live entertainment. Strom could have anticipated seeing people near the bar at that hour of the day. Therefore, there was nothing suspicious about the presence of people in the vicinity at that place and time.

Second, Strom's testimony that he approached the defendants' car in part because the windows were fogged and the area was one where there was a high incidence of auto burglaries does not provide justification for opening the door. As Strom approached the car, and before he shined his flashlight into it, he saw that the car was filled with occupants. Any suspicions he might have had that an auto burglary was in progress must have been dispelled.

While Strom was within his rights in standing outside the car and shining his flashlight inside, as the parking area was evidently open to

the public, nothing Strom was found to have seen inside the car justified any further investigation. In this regard, the court found only that Strom saw what he "thought" was a rolling paper in the hands of Diane Bierman. Indeed, Strom admitted he could not "specifically" identify the object as a rolling paper, and a subsequent search of Diane Bierman and the seating area of the vehicle revealed no rolling paper. In fact, the evidence indicates it was probably a compact case that Strom saw in Bierman's hands, if he saw anything at all. Strom's testimony that he opened the car door in part because Bierman attempted to conceal the object in her hands was apparently rejected by the court, as there was no mention of furtive gestures in the court's factual remarks at the hearing or in its findings of fact in its written order. This omission could be accounted for on either of two theories. First, the court may have felt that the movement Strom testified to was merely a startle reflex at having a light shined in the car. In the alternative, the court may simply not have believed Strom.

■ Determining the credibility of a witness and the weight to be given to his testimony is a function reserved primarily for the trier of fact, and a court of review will not normally substitute its own judgment in that regard. (*People v. Locascio* (1985), 106 Ill. 2d 529, 478 N.E.2d 1358.) However, a court of review is not, in all instances, precluded from considering the credibility of witnesses. (See *People v. Newell* (1984), 103 Ill. 2d 465, 469 N.E.2d 1375; *People v. Seymour* (1977), 53 Ill. App. 3d 367, 368 N.E.2d 1018.) If we were to consider Strom's testimony, we could not say we would find Strom a credible witness.

At the preliminary hearing, Strom testified that he saw a "white object" in Bierman's hands—not a rolling paper. Apparently, it was what Strom perceived as a "licking" motion that caused Strom to believe the white object was a hand-rolled cigarette. Moreover, at the preliminary hearing, Strom testified that he did not see the furtive gesture until after he had opened the car door. Strom changed his testimony at the suppression hearing, apparently in an effort to provide a stronger basis for an investigatory stop. At the suppression hearing, the "white object" Strom had seen became a "rolling paper." The furtive gesture Strom had seen *after* he opened the car door preceded his opening of the door. We do not find these discrepancies to be trivial, nor do we find the fact that they were not presented to the court at the suppression hearing a bar to our consideration of them.

■ The entire record, including transcripts of a preliminary hearing where a different judge presided, may be considered upon review to determine whether an officer's arrest and seizure were made with

probable cause. (*People v. Dennison* (1978), 61 Ill. App. 3d 473, 378 N.E.2d 220.) It follows that preliminary hearing transcripts can be used to determine whether Strom had grounds for an investigatory detention and search. We find, from an examination of the transcripts of the preliminary hearing, that Strom was a less than credible witness, at least in some aspects of his testimony, and that the trial court's omission of any reference to furtive gestures in its findings of fact was justified no matter what its reasoning may have been. (See *People v. Dyer* (1986), 141 Ill. App. 3d 326, 490 N.E.2d 237; *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.) The trial court's findings of fact should not be overturned by a reviewing court unless manifestly erroneous. *People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513.

Given the circuit court's findings of fact, which we conclude are supported by the testimony, the only issue remaining for our consideration is whether the less than positive sighting of a rolling paper was sufficient to justify an investigatory stop or, more specifically, whether Strom was justified in opening the door of defendants' car upon seeing what he thought was a rolling paper in Diane Bierman's hands.

In *People v. Damon* (1975), 32 Ill. App. 3d 937, 337 N.E.2d 262, the police had received a report of a suspicious man in a building. When the officer responding to the call entered the building, he observed the defendant at the top of a staircase with another man. The officer said he saw defendant drop a hand-rolled cigarette to the floor. The officer picked it up and then arrested the defendant because he suspected the cigarette contained marijuana. A search of defendant revealed packages of heroin. Defendant moved to suppress the evidence, which he argued was obtained as a result of his illegal arrest. The trial court denied his motion. The appellate court reversed, holding that the recovery of a hand-rolled cigarette thrown away by defendant and suspected to contain marijuana was insufficient to furnish probable cause for arrest.

In *People v. Wright* (1980), 80 Ill. App. 3d 927, 400 N.E.2d 731, an officer observed, in plain view, two hand-rolled cigarettes in defendant's car. The officer seized the cigarettes and searched defendant's car, finding cannabis, pills and drug paraphernalia. The trial court denied defendant's motion to suppress. This court reversed, holding that the presence of a hand-rolled cigarette, without other supporting proof, merely created a suspicion of criminal activity and did not furnish probable cause to arrest.

█ Because of the issue before us in the instant case, we need

not decide whether the presence of a hand-rolled cigarette created a reasonable suspicion sufficient to justify an investigatory stop. In this case, Strom was less than positive in testifying that he saw a rolling paper in the hands of defendant Diane Bierman. He admitted on cross-examination at the suppression hearing that he could not specifically identify the object in Diane Bierman's hands. We have already noted the discrepancies in his preliminary hearing testimony and the fact that no rolling paper was found in the seating area or on Diane Bierman. We hold that where the officer's identification of the object as a rolling paper was less than positive, it could not support an investigatory stop and that, where there were no articulable facts to support an investigatory stop, opening the door of defendants' car constituted an illegal search. *People v. Piper* (1981), 101 Ill. App. 3d 296, 427 N.E.2d 1361.

A trial court's ruling on a motion to suppress will not be set aside unless clearly erroneous. (*People v. White* (1987), 117 Ill. 2d 194, 512 N.E.2d 677.) Having reviewed the record in its entirety, we cannot say that the trial court's ruling was clearly in error.

Affirmed.

KARNS, P.J., and HARRISON, J., concur.