THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KASCELL JENNINGS, Defendant-Appellant.

Fourth District   No. 4—88—0450

Opinion filed June 22, 1989.—Rehearing denied August 1, 1989.

John J. Rekowski, of Rekowski & Collins, of Collinsville, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On March 17, 1988, the circuit court of McLean County entered judgment on a jury verdict returned finding defendant Kascell Jennings guilty of unlawful possession of a controlled substance with the intent to deliver 15 grams or more (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(c)) and unlawful use or possession of weapons by a felon (Ill.

Rev. Stat. 1987, ch. 38, par. 24—1.1). The court subsequently sentenced defendant to a term of 33 years' imprisonment on the controlled substances offense and five years' imprisonment on the unlawful use of weapons offense, the sentences to run concurrently.

Defendant now appeals his conviction and sentence, contending the trial court: (1) erred in denying his motion to quash his arrest and suppress certain evidence which he claims was illegally obtained; (2) deprived him of a fair trial by allowing in certain evidence concerning other crimes; (3) erred in allowing a Department of Corrections employee to testify regarding the details of defendant's prior felony conviction; and (4) abused its discretion in sentencing defendant to an extended-term sentence. We affirm.

The report of proceedings on defendant's motion to quash his arrest and suppress evidence revealed that, on December 8, 1987, Illinois State Trooper Greg Neumann pulled over an automobile for traffic violations after he paced it travelling at an excessive rate of speed and watched it following another vehicle too closely. Neumann said he intended to write the driver a warning ticket for speeding. He obtained the licenses from both the driver and the passenger (defendant), as the driver indicated his passenger was the owner of the car. While waiting for the men to produce their licenses, Neumann observed flakes of a greenish-brown plantlike substance, possibly cannabis, scattered on the car's interior. He also noticed the car had a stale smoke smell emanating from it.

Neumann said he intended to search the car for cannabis but first returned to his squad car to write out a warning ticket and run a computer check on the two licenses he had obtained. The computer check revealed defendant had been arrested in 1986 for manufacturing heroin. Neumann also learned both men had prior felony convictions.

Troopers Gregory Beoletto and Michael Snyders subsequently arrived on the scene to assist Neumann. Beoletto overheard the information concerning defendant and the driver which had been transmitted over the radio. However, he said that, before a search of the vehicle ensued, he said he had no reason to believe defendant had committed or was committing a crime. During a conversation with the defendant, Beoletto twice asked him if he could search his vehicle for guns or drugs, and defendant twice refused.

Snyders said he then approached defendant and asked him if he could search various areas of his car for guns or drugs. He said defendant laughed and told him to "go ahead, take a look." Snyders said defendant stated to him he would not find anything anyway.

Defendant testified he refused on three different occasions to allow the officers to search his car. He said a trooper then asked him to step out of the car, and he complied. Beoletto testified he did not hear the specific question which Snyders asked defendant; however, he said he thought he heard defendant say "okay" to Snyders and then watched defendant step out of the vehicle. Beoletto indicated during his testimony he was surprised Snyders had obtained defendant's consent for a search so easily since defendant had twice responded negatively to his own requests to search.

Snyders then conducted a search of the interior of the automobile during which he initially uncovered a red, .12 gauge shotgun shell under the passenger side of the front seat. Defendant did not possess a firearm owner's identification card, and both men had prior felony convictions, so the police placed both of them under arrest for the offense of possession of a firearm (ammunition) by a felon. Snyders asked defendant if he had a key to the car's glove box or the trunk, and he said defendant told him he did not have any keys for them. A canine unit was summoned to inspect the vehicle, and the vehicle was subsequently towed to a nearby station.

At the station, the troopers immediately began a complete search of the vehicle. Some troopers forced open the glove box, and they discovered it contained a .20 gauge Federal shotgun shell as well as a bag containing a white powdery substance which they believed to be cocaine. A loaded .41 magnum Smith & Wesson pistol was also found in the trunk.

Following the presentation of evidence at the hearing on defendant's motion, the trial court made the following findings in its order dated February 9, 1988: (1) the troopers "lawfully stopped" the automobile in which defendant was riding; (2) "defendant verbally consented to the search of the passenger compartment of the vehicle and exited the car to allow the officer to search"; (3) "defendant was arrested *** for unlawful possession of the shotgun shell found during the interior search by the officer who knew *** the defendant" had a prior felony conviction; and (4) with or without defendant's consent, the search of the car's glove box and trunk "was incident to his lawful arrest for unlawful use of weapons by a felon and was with probable cause *** based upon" the circumstances involved. The court denied defendant's motion to quash arrest and suppress evidence.

On appeal, defendant contends the court's decision on his motion was erroneous because he claims the troopers possessed no objectively reasonable basis for stopping his vehicle, and the reasons advanced by them were merely a pretext for their illegal search and seizure. Fur-

ther, he claims no basis existed for the officer to detain him, since he was not the driver of the vehicle.

■ However, because Trooper Neumann paced defendant's vehicle travelling in excess of the speed limit in violation of section 11—601 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—601), he was justified in stopping the car. (Ill. Rev. Stat. 1987, ch. 38, par. 107—14; *People v. Hampton* (1981), 96 Ill. App. 3d 728, 422 N.E.2d 11.) Thus, the initial stop of the vehicle was valid and did not appear to be pretextual. Trooper Neumann also possessed the authority to briefly detain the driver and request that he produce a valid driver's license. Ill. Rev. Stat. 1987, ch. 95½, par. 6—112.

The State here argues the trooper also had a lawful right to ask for and run a warrant check on defendant's driver's license. It cites *People v. Ellis* (1983), 113 Ill. App. 3d 314, 446 N.E.2d 1282, and *People v. Eyler* (1985), 132 Ill. App. 3d 792, 477 N.E.2d 774, *cert. denied* (1987), 481 U.S. 1007, 95 L. Ed. 2d 205, 107 S. Ct. 1632, to support its argument.

■ Both *Ellis* and *Eyler*, though, involved investigatory *Terry* stops where police suspected criminal activity and ran warrant checks on the individuals detained. The instant case does not involve a *Terry* stop. The testimony of Trooper Neumann indicates he had no reason to suspect defendant of criminal activity at the time of the initial stop. In this case, the trooper did not possess the authority to demand the production of defendant's driver's license absent proof that defendant was driving the vehicle. (*People v. Francis* (1971), 4 Ill. App. 3d 65, 280 N.E.2d 49.) The evidence reveals he was, in fact, a passenger in his own car.

■ While Neumann did not have the authority to request defendant's license, though, he was not restricted from glancing inside the interior portion of the automobile after the valid traffic stop. (*People v. Thomas* (1979), 75 Ill. App. 3d 491, 394 N.E.2d 624.) He had not yet issued a warning ticket to the driver, and it was reasonable to detain him for that brief period. Once Neumann observed a plantlike substance resembling cannabis scattered about the car's interior, he had reasonable grounds to believe a crime had been or was being committed and evidence of the offense could be found in the vehicle. At that point, the evidence was in plain view and, although he did not do so, Neumann had probable cause to enter the vehicle and seize the evidence. *People v. Graham* (1974), 23 Ill. App. 3d 685, 320 N.E.2d 156.

Defendant also contends the evidence obtained from the subsequent search of the glove box and trunk should have been suppressed because the court's own findings indicated defendant's consent to that

search was ambiguous. Furthermore, he emphasizes the troopers did not have a search warrant. Finally, he claims the second search was a fruit of the poisonous tree because the first search itself was improper.

However, the initial search of specified areas of the passenger compartment of defendant's car was appropriate under the circumstances here. Trooper Snyders' testimony indicated defendant had consented at least to a search of certain areas of the car, including under the seats. The trial court's determination, predicated upon the credibility of the witnesses, that defendant had, in fact, consented to the search was not contrary to the manifest weight of the evidence. Since valid consent was thus obtained, a warrantless search of the areas was permissible. *People v. Bean* (1981), 84 Ill. 2d 64, 417 N.E.2d 608.

As noted previously, Trooper Snyders found a live shotgun shell under the front passenger seat during the course of this consensual search. The troopers knew both men were convicted felons, and their possession of such firearm ammunition was in violation of the law. (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.1.) The troopers were fully justified in arresting the two men under those circumstances. The subsequent search of the vehicle was then permissible as a search incident to a lawful arrest. *People v. Bayles* (1980), 82 Ill. 2d 128, 411 N.E.2d 1346.

In summary, the trial court properly denied defendant's motion to quash arrest and suppress evidence since no illegal search or seizure occurred. The evidence in question was admissible under the circumstances presented here.

Next, defendant contends he was denied a fair trial where the trial court allowed in testimony and argument regarding the weapon found in the trunk and the .20 gauge shotgun shell found in the glove box of his car. Defendant was not charged with possession of that particular piece of ammunition, and the State nol-prossed the count relating to the unlawful possession of the .41 caliber pistol just prior to commencement of trial. Defendant claims information relating to these items was both irrelevant and immaterial to any of the remaining charges for which he was on trial and was also quite prejudicial. He also claims the State failed to show the gun was somehow connected with him.

The State did use the evidence repeatedly throughout the course of the trial. The prosecutor mentioned the pistol during opening statements, after which defense counsel unsuccessfully moved for a mistrial. Over objection, numerous police officer witnesses also testified

concerning the weapon. The evidence revealed the weapon was discovered in the trunk of defendant's car, but defendant's fingerprints were not found on the gun.

■ Generally, evidence of the commission of other crimes by an accused is inadmissible if offered merely to establish a propensity to commit crimes. However, evidence of other crimes is admissible to show knowledge, intent, motive, design, plan, or identification. *People v. Alexander* (1982), 93 Ill. 2d 73, 442 N.E.2d 887.

■ Here, evidence that the troopers subsequently found a pistol and shotgun shell in the trunk and glove box of defendant's car made it more likely defendant knew of the existence of the shotgun shell under the front passenger seat. Although the connection between the items admittedly is more tenuous because a shotgun shell, and not ammunition for a pistol, was found, we still hold the evidence was properly admitted to show defendant's knowledge in this case.

Defendant also contends the trial court erred in allowing a Department of Corrections employee to testify concerning the details of his prior imprisonment at Menard Correctional Center. Donald Gentsch, a records supervisor at that center, testified he became familiar with an individual known as Kascell Jennings during his employ at Menard. Gentsch identified that Kascell Jennings as the defendant sitting in the courtroom. He further examined and testified from certain departmental conviction records and relayed information from them concerning the county and case number of defendant's previous conviction and sentence to the Department of Corrections.

Defendant acknowledges the State had to allege and prove the existence of defendant's prior felony conviction as an element of the offense of unlawful use of a weapon by a felon. However, he claims it was unnecessary for a witness to identify defendant as a prior felon and to testify about his prior incarceration in order to prove this element, especially when defendant did not challenge the certified copy of the conviction. He argues such testimony was highly prejudicial and irrelevant.

According to statements of counsel, defense counsel refused to stipulate to defendant's prior felony record initially and continued in such refusal until the witness in question arrived to present his testimony. Since no stipulation occurred, the State proceeded through Gentsch to prove defendant's prior conviction and his identity.

■ ■ In the prosecution for unlawful use of a weapon by a felon, a prior conviction must be proved by the record or by an authenticated copy of conviction showing the caption, return of indictment or filing of information, arraignment, paneling of jury, and final judg-

ment. (*People v. Gober* (1986), 146 Ill. App. 3d 499, 496 N.E.2d 1226.) While we recognize the identity of name in a certified copy of a prior conviction gives rise to a rebuttable presumption of identity of person (*People v. Davis* (1983), 95 Ill. 2d 1, 447 N.E.2d 353), we cannot conclude error occurred here when the State called a Department of Corrections employee to testify concerning defendant's identity and prior conviction and sentence. The statutory predecessor to the present section 24—1.1 of the Criminal Code of 1961 made it a felony for a prior convicted felon · to commit the crime of unlawful use of weapons within five years of his conviction or release from the penitentiary. (Ill. Rev. Stat. 1983, ch. 38, par. 24—1(b).) Cases interpreting this earlier statutory provision indicated that identification evidence establishing defendant as the same person as the stated felon was not only desirable but *necessary* in order to obtain a conviction under this enhanced penalty portion of the statute. (*People v. Mitchell* (1979), 68 Ill. App. 3d 370, 386 N.E.2d 153; *People v. Dixon* (1970), 46 Ill. 2d 502, 263 N.E.2d 876.) The trial court did not err in allowing the testimony in question here.

Finally, defendant contends the trial court abused its discretion in imposing an extended-term sentence of 33 years' imprisonment for his conviction for possession of 15 or more grams of cocaine with the intent to deliver it since he had no prior record of other drug offenses, and his conduct did not threaten or cause great harm. He claims the court also failed to take certain other factors into consideration, including his age, the length of time between this and his last criminal conviction, his employment, and existence of dependents to support.

At the sentencing hearing, the court took judicial notice of the presentence investigation report and the facts and evidence adduced at trial. The report revealed defendant's age, employment, and family status as well as his prior record. Included in the list of prior offenses committed by defendant were the crimes of burglary, armed robbery, and murder. While defendant offered no evidence in mitigation at the sentencing hearing, both he and his counsel made statements to the court concerning the mitigating circumstances present.

In sentencing the defendant to an extended term, the court acknowledged the present conviction was defendant's first controlled substance offense. However, the court also emphasized defendant had previously been convicted of a number of felonious offenses. Moreover, the controlled substance conviction involved a large quantity of high quality cocaine. The court concluded that, due to defendant's past record, an extended-term sentence was necessary to protect the public and to deter others.

■■ ■ In setting forth the reasons for the sentence imposed, a trial court need not recite, and assign a value to, each fact presented at the sentencing hearing. (*People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9.) It is presumed the court considered all evidence offered in mitigation absent some statement to the contrary. (*People v. Bradney* (1988), 170 Ill. App. 3d 839, 525 N.E.2d 112.) Sentences which fall within the statutory limits will not be disturbed by us on review absent an abuse of discretion by the trial court. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) The circumstances present in the instant case fully support the sentence imposed. The trial court did not abuse its discretion in sentencing defendant to an extended term of 33 years.

For the reasons stated, the judgment of the circuit court of McLean County is affirmed.

Affirmed.

McCULLOUGH, P.J., and SPITZ, J., concur.