THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DANNY CLARK, Defendant-Appellee.

Second District    No. 2—88—0568

Opinion filed June 30, 1989.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Fred M. Morelli, Jr., of Law Offices of Fred M. Morelli, Jr., of Aurora, and Vincent C. Argento, of Law Offices of Vincent C. Argento, of Elgin, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

The State appeals pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)) from an order of the circuit court of Du Page County granting a motion to quash arrest and suppress evidence filed by defendant, Danny Clark.

The single issue raised is whether the circuit court erred in granting the motion to quash arrest and suppress evidence.

Defendant was charged with committing the offenses of unlawful possession of less than 15 grams of a controlled substance containing cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(b)) and unlawful possession of more than 30 grams, but not more than 500 grams, of a controlled substance containing cannabis (Ill. Rev. Stat. 1987, ch. 56½, par. 704(d)). Defendant subsequently filed a motion to quash his arrest and suppress the evidence seized contending that there was no probable cause to seize a "cigarette" from his automobile or to arrest him contemporaneous with the seizure without a warrant.

At the suppression hearing, defendant testified that, on February 9, 1988, at 11:45 a.m., he was driving his yellow Toyota with some friends in the City of Wood Dale. He was smoking a cigarette, which he admitted contained marijuana, and passed it to his friend in the front passenger seat. The cigarette was being smoked while he was stopped for a couple of minutes waiting for a train to pass. The hand-rolled cigarette was crumpled and lopsided and looked different from a commercial cigarette. At some point, the cigarette was passed to the passengers in the backseat. He remembered that at the time he

was stopped for the train, another car was stopped directly behind him. He also recalled that at a previous stop light he had been stopped and the same car was stopped directly behind him. He admitted that the car behind him contained the person now known to him as Detective Vitek of the City of Wood Dale.

He pulled his car into a gas station to purchase gas. As he exited the car to get gas, he noticed that his car was on the wrong side of the pump and reentered it. He then heard a knock at his window and saw Detective Vitek. He rolled down the window. The detective identified himself, and told the defendant to get out of the car and to produce his license. The detective also demanded the cigarette. Defendant acknowledged that it smelled like marijuana smoke inside the vehicle. A passenger in the rear of the car gave the marijuana cigarette to Detective Vitek. Vitek told everyone else to exit the vehicle. Vitek asked defendant if there was anything else in the vehicle, and he told him some more was in the glove box.

Detective Vitek testified that at the time in question he was driving an unmarked squad car on Wood Dale Road. He stopped a foot behind a yellow Toyota with four persons in it at a red light. Vitek was seated about 10 feet from the back window of the Toyota. He then saw the driver pass a hand-rolled cigarette, which he described as not as smooth and round as a commercial cigarette, to the passenger in the front seat. He saw the cigarette being puffed and the smoke held in. The Toyota turned left and shortly thereafter stopped at a railroad crossing. He was again behind the vehicle. He saw the cigarette being passed from the front to the rear passenger area of the car and being smoked by holding the smoke in before exhaling. Detective Vitek stated that this cigarette appeared to be hand-rolled. Vitek also stated that the manner in which it was being smoked and passed around indicated to him that it was a marijuana cigarette, although he could not smell it at the time. The vehicle in front of him remained stopped for the train for about a minute, then it pulled into a gas station several hundred feet away.

Vitek followed and stopped his vehicle behind defendant's at the service station. He had not made any effort to stop defendant up to this point. He approached the vehicle, tapped on the driver's window, identified himself, and told the driver to open the window. Once the window was down, he smelled a strong odor of marijuana emanating from the Toyota. He asked defendant to get out of the car and for the cigarette to be given to him. A passenger in the rear seat handed the marijuana cigarette, still lit, to him. Another marijuana cigarette was given to the detective, and he then saw marijuana seeds on the floor

of the car. In response to Vitek's questions whether there was any more, defendant told Vitek that there was more in the glove box. Officer Delcarlo, another officer assisting Vitek, found a bag of green leafy substance in the glove compartment.

On cross-examination, Vitek stated that he did not have a warrant and that the defendant had committed no traffic violations. He testified that, based upon what he observed, he determined that the car's occupants were doing something illegal and that he would stop them to investigate and to obtain the cigarette. When he knocked at the window, he did so to investigate and to obtain the cigarette. He acknowledged that there are hand-rolled cigarettes that do not contain marijuana, having seen them on television.

Both parties stipulated that, if Officer Delcarlo were to testify, he would state that he entered defendant's vehicle and removed some contraband from the glove compartment pursuant to Vitek's direction.

The trial court granted defendant's motion to quash and suppress evidence finding, in pertinent part:

> "The only observation made by the arresting officer was a cigarette having been passed among the occupants of the motor vehicle. All case law at this point indicates this is not a violation of the law. No search warrant nor arrest warrants were presented. The window was rolled up, hence, no smell of marijuana was detected by the arresting officer. The Court, under the facts presented, finds there was no reasonable basis for the actions taken by the police officer.

> The subsequent observations and the search of the motor vehicle was [*sic*] without consent and was [*sic*] in violation of the Constitutional [*sic*] rights of the defendant."

The State contends on appeal that the police officer's action in having the defendant roll down the vehicle window was based on articulable facts justifying an investigation and detention. The State has not argued that the facts were sufficient to justify a warrantless arrest, and, accordingly, we have no occasion to address that separate question.

A trial court's ruling on a motion to suppress will not be disturbed unless it is manifestly erroneous. (*People v. Gacho* (1988), 122 Ill. 2d 221, 237, 522 N.E.2d 1146.) Although the parties focus on whether the police officer's approaching defendant's vehicle, knocking on the window, and requesting defendant to roll the window down was based on a reasonable articulable suspicion to detain defendant for investigative purposes under the principles formulated in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, we must

first examine whether these actions constitute a seizure in this case. For if there was no seizure, then the fourth amendment was not implicated at that point. See *Florida v. Royer* (1983), 460 U.S. 491, 497-98, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324; *United States v. Mendenhall* (1980), 446 U.S. 544, 552-53, 64 L. Ed. 2d 497, 508-09, 100 S. Ct. 1870, 1876.

The purpose of the fourth amendment is not to eliminate all contact between the police and citizens, and as long as the person to whom questions are put remains free to disregard the questions and walk away, there is no intrusion upon that person's liberty or privacy which would require some particularized and objective justification. (*Mendenhall*, 446 U.S. at 553-54, 64 L. Ed. 2d at 509, 100 S. Ct. at 1876.) A person has been seized within the meaning of the fourth amendment only when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Royer*, 460 U.S. at 501-02, 75 L. Ed. 2d at 239, 103 S. Ct. at 1326; *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.

The fourth amendment is not implicated where the police merely approach an individual on the street or in a public place and ask him if he is willing to answer questions, or put questions to him if the person is willing to listen. (*Royer*, 460 U.S. at 497, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324.) The fact that a police officer identifies himself as such does not, without more, convert the encounter into a seizure. (*Royer*, 460 U.S. at 497, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324.) A person approached by the police need not listen to or answer any questions and may go on his way, and his refusal to listen to or answer questions does not, without more, furnish reasonable, objective grounds to detain him, even momentarily. (*Royer*, 460 U.S. at 497-98, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324.) Examples of circumstances which might indicate a seizure would be the threatening presence of several police officers, the display of a weapon by an officer, some physical touching of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. (*Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.) Of course, these are only examples, and we must examine all of the circumstances in determining whether the person reasonably believed he was free to go.

In this case it is uncontested that the officer took no action designed to stop defendant while defendant drove his vehicle. The officer merely followed defendant in an unmarked squad car until defendant drove into a service station and parked at a pump. The offi-

cer did not activate any emergency lights or siren or engage in any other conduct to effectuate a stop. Defendant testified that he drove into and parked at the service station voluntarily and not at the direction of the officer. Thus, the only question we need answer is whether the officer's approaching defendant's vehicle, tapping on the window, identifying himself as a police officer, and indicating to defendant to roll down the window constitutes a seizure within the meaning of the fourth amendment.

Professor Wayne R. LaFave in his respected treatise on the fourth amendment states that "the mere approach and questioning of such persons does not constitute a seizure," and "[t]he result is not otherwise when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation" such as the officer tapping on the window. (3 W. LaFave, Search & Seizure §9.2(h), at 415-16 (2d ed. 1987).) "A request that the suspect open the door or roll down the window would seem equally permissible, but the same would not be true of an order that he do so." 3 W. LaFave, Search & Seizure §9.2(h), at 416 (2d ed. 1987).

The evidence does not show that the officer demanded or ordered defendant to roll down the window or that he used any language or voice intonations indicating that compliance with his request might be compelled. The officer merely tapped on the window, identified himself, and said to open it. According to defendant, he rolled down the window when the officer tapped on it, but he did not testify that the officer told him to open it. Further, the officer did not indicate to defendant that he was suspected of any wrongdoing which might have led defendant to believe he was not free to go. (See *Royer*, 460 U.S. at 501, 75 L. Ed. 2d at 239, 103 S. Ct. at 1326.) While the subjective intention of the officer in approaching the vehicle admittedly was to investigate and to obtain the cigarette, this subjective, uncommunicated intent is irrelevant even if his intent was to detain the defendant. (*Mendenhall*, 446 U.S. at 554 n.6, 64 L. Ed. 2d at 509 n.6, 100 S. Ct. at 1877 n.6; see also *People v. Hoskins* (1984), 101 Ill. 2d 209, 213-14, 461 N.E.2d 941.) Under these circumstances, a reasonable person would have believed that he was free to disregard the officer's request to roll down the window and was free to leave. In a motion to suppress, defendant bears the burden to establish that the seizure was unreasonable. (*People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898.) As defendant has failed initially to show a seizure has occurred, he has not met this burden.

Of course, had the officer taken steps to compel defendant to

open the window or to indicate that he was not free to leave our conclusion would be different. As there was no seizure of defendant under these circumstances, there was no implication of the fourth amendment. Once defendant rolled down the window and the officer smelled the marijuana, then, together with the circumstances already observed by him of the hand-rolled cigarette and the way it was smoked and passed among the occupants of the vehicle, he had probable cause to conduct a search of defendant's vehicle. (See *People v. Stout* (1985), 106 Ill. 2d 77, 87, 477 N.E.2d 498.) Consequently, the trial court's suppression of the evidence and quashing of the arrest was manifestly erroneous.

■ Even assuming Detective Vitek's conduct did rise to the level of a fourth amendment seizure, such detention was based on reasonable suspicion that defendant was involved in criminal activity. Section 107—14 of the Code of Criminal Procedure of 1963 provides that a peace officer may stop a person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is, has, or is about to commit an offense. (Ill. Rev. Stat. 1987, ch. 38, par. 107—14.) This codification reflects the principles established in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. *People v. Long* (1983), 99 Ill. 2d 219, 228, 457 N.E.2d 1252.

■ In *Terry*, the Supreme Court recognized a limited exception to the probable cause requirement which allows a police officer, under appropriate circumstances and in an appropriate manner, to briefly detain a person for investigatory purposes and, if necessary for safety, to conduct a limited protective search of that person for concealed weapons. (*Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.) Specific and articulable facts, and not a mere hunch, must exist to justify a *Terry* stop and a frisk for a weapon. (*Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.) Facts and circumstances, which if viewed separately might constitute innocent behavior, may provide reasonable suspicion justifying a *Terry* stop when considered in their entirety. (*United States v. Sokolow* (1989), 490 U.S. ___, 104 L. Ed. 2d 1, 11-12, 109 S. Ct. 1581, 1586-87.) The underlying inquiry in any *Terry*-type situation is whether the police officer's conduct is reasonable under the circumstances known to the officer at the time he initiated the stop and frisk. (See *Adams v. Williams* (1972), 407 U.S. 143, 148, 32 L. Ed. 2d 612, 618, 92 S. Ct. 1921, 1924; *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883; *People v. Long* (1983), 99 Ill. 2d 219, 227-28, 457 N.E.2d 1252.) In order for the police to justify a temporary detention and frisk for weapons, the officer

must point to specific, articulable facts which, when taken together with natural inferences, make the intrusion reasonable. *People v. Smithers* (1980), 83 Ill. 2d 430, 435-36, 415 N.E.2d 327.

Here, the officer observed, at a distance of approximately 10 feet and during daylight hours, defendant smoke a hand-rolled cigarette and then pass the cigarette to the passenger in the front seat, who smoked the cigarette and in turn passed it to one of two passengers in the backseat. He described the cigarette as being hand-rolled, not smooth and round. The officer also observed defendant and various passengers inhale and delay in exhaling the smoke. The officer made these observations both at a red light and a short time later while defendant's automobile was stopped at a railroad crossing. Furthermore, the officer testified that, based on his observation of the cigarette and the manner in which it was being smoked, he concluded that defendant and the occupants of the vehicle were passing around a marijuana cigarette.

These circumstances, as known to the officer, and the natural inferences drawn therefrom, provided a reasonable, articulable suspicion for the officer to have believed that defendant and the passengers in the vehicle were committing an offense. The fact that the cigarette was hand-rolled, that the occupants passed it back and forth, and that they inhaled and delayed in exhaling provides a reasonable inference that the occupants of the vehicle were smoking marijuana. Similar circumstances have been found to be indicative of marijuana use. (See, *e.g., Lewis v. State* (Ala. Crim. App. 1987), 518 So. 2d 214 (unique way of smoking hand-rolled cigarette); *State v. Arnot* (Mo. App. 1987), 724 S.W.2d 676 (hand-rolled cigarette passed around among four young men); *State v. Thompson* (1976), 196 Neb. 55, 241 N.W.2d 511 (smoking and passing around hand-rolled cigarette held in scissors).) Additionally, although the officer did not testify as to any specific training in or experience with illicit drug investigations, he was a 13-year veteran police officer, and, under the circumstances present here, it was reasonable for him to infer that defendant and the passengers were smoking marijuana. *People v. Bierman* (1987), 163 Ill. App. 3d 256, 516 N.E.2d 963, principally relied on by defendant, is factually inapposite as the only suspicious circumstance there, which was found insufficient by the appellate court to justify a search, was an officer's testimony that he "thought" he saw rolling paper in the hands of defendant who was seated in a parked vehicle.

Because the officer had a reasonable suspicion justifying his temporary detention of defendant to conduct an investigative inquiry, he was lawfully located at the window of defendant's vehicle when

defendant opened it, and any observations he made at that time were proper. His smelling of marijuana emanating from defendant's vehicle, coupled with his prior observations, provided the probable cause to search defendant's vehicle. *Cf. People v. Stout* (1985), 106 Ill. 2d 77, 87, 477 N.E.2d 498.

Based on the foregoing, we hold that the trial court's suppression of evidence and quashing of defendant's arrest was manifestly erroneous.

The judgment of the circuit court of Du Page County is reversed, and this cause is remanded.

Reversed and remanded.

McLAREN and NASH, JJ., concur.