THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY LEE SMITH, Defendant-Appellant.

Fourth District   No. 4—93—0174

Opinion filed September 15, 1994.

Daniel D. Yuhas and Gloria Ann Morris, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Richard Norris, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1992, defendant, Henry Lee Smith, was arrested for possession of less than 2.5 grams of cannabis. (Ill. Rev. Stat. 1991, ch. 56½, par. 704(a).) In January 1993, the trial court conducted a hearing on defendant's motion to suppress evidence simultaneously with defendant's bench trial. After denying the motion, the court found defendant guilty. In February 1993, the court sentenced him to 12 months' conditional discharge. Defendant appeals, arguing that the trial court erred in denying his motion.

We disagree and affirm.

## I. BACKGROUND

In September 1992, defendant was one of three passengers in a

car stopped for a minor traffic violation. After the police officer verified the driver's identification, he asked the passengers, including defendant, for their identification. Defendant gave the officer his identification documents, and as the officer sat in his squad car completing the paperwork for the traffic violation, the police dispatcher informed him that an outstanding warrant existed for defendant's arrest. The officer arrested defendant on the warrant, searched him, and found 1.1 grams of cannabis. The State concedes that the officer never informed defendant that he was not required to comply with the request to produce identification. Defendant argued to the trial court, as he does to this court, that the officer's request for defendant's identification constituted an illegal search or seizure.

## II. ANALYSIS

Defendant argues that the police officer violated his fourth amendment right against unreasonable search and seizure by asking for his identification and taking it to the squad car to run a computer check. (U.S. Const., amend. IV.) We disagree.

We initially note that the trial court's ruling on a motion to suppress is entitled to great deference and will not be overturned unless it was against the manifest weight of the evidence. (*People v. Murray* (1990), 137 Ill. 2d 382, 387, 560 N.E.2d 309, 311; *People v. Cole* (1994), 256 Ill. App. 3d 590, 593, 627 N.E.2d 1187, 1189; see *People v. Britt* (1994), 265 Ill. App. 3d 129, 135 (discussing the distinction between "against the manifest weight of the evidence" and "clearly erroneous").) This is because motions to suppress typically, as in this case, require assessing the credibility of witnesses and weighing their testimony, functions the trial court is best suited to accomplish. *People v. Garriott* (1993), 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780, 782-83.

In *Murray*, the supreme court delineated three tiers of police-citizen encounters. Each descending level requires less "justification" for the officer to engage the private individual. The most intrusive tier involves an arrest, which must be supported by probable cause. The intermediate level involves a so-called *Terry* stop (see *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868), which requires a reasonable suspicion of criminal activity. (See 725 ILCS 5/107—14 (West 1992).) The third tier, commonly known as the community caretaking or public safety function, involves no coercion or detention and therefore does not constitute a seizure. (*Murray*, 137 Ill. 2d at 387, 560 N.E.2d at 311-12.) Conduct that does not constitute a seizure (or a search) does not implicate the fourth amendment. (*Cole*, 256 Ill. App. 3d at 593, 627 N.E.2d at 1189.) Accordingly, we

hold that police interaction with a private citizen within the scope of the community caretaking or public safety function does not implicate the fourth amendment and therefore does not require any legal justification before a police officer may engage in that conduct.

This holding accords with the purposes of the fourth amendment, which do not prohibit all contact between the police and citizens. (*People v. Clark* (1989), 185 Ill. App. 3d 231, 236, 541 N.E.2d 199, 202.) Consequently, the fourth amendment is not implicated when an officer simply approaches an individual and asks him questions if that person is willing to listen. (*Cole*, 256 Ill. App. 3d at 593, 627 N.E.2d at 1189.) Of course, a person questioned by the police pursuant to their community caretaking or public safety function remains free to decline to answer the officers' questions. *Clark*, 185 Ill. App. 3d at 236, 541 N.E.2d at 202.

In this case, the State concedes that the officer had neither probable cause to believe nor reasonable grounds to suspect defendant was engaged in criminal activity. Thus, if the officer's request for identification constituted a seizure, it lacked sufficient legal justification and was therefore improper. However, if it did not constitute a seizure, the fourth amendment is not implicated, and the officer needed no legal justification to make his request. The specific issue in this case thus becomes whether a police officer can ask an otherwise lawfully stopped individual for identification without that request constituting a seizure in violation of the fourth amendment. We hold that he can.

■ "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." (*Florida v. Bostick* (1991), 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386.) Even if an officer has no basis for suspecting an individual of criminal activity, the officer may ask him general questions, including requests for identification, as long as the officer does not convey that compliance with the requests is required. (*Bostick*, 501 U.S. at 434-35, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386.) Examples of circumstances which may suggest to the person questioned that his compliance is required include the following: (1) the threatening presence of several police officers; (2) the display of an officer's weapon; (3) an officer physically touching the citizen; and (4) an officer's use of language or tone of voice indicating that compliance with the request is compelled. (*Cole*, 256 Ill. App. 3d at 594, 627 N.E.2d at 1190.) As long as a reasonable person in the defendant's position would feel free to disregard the police, the encounter is consensual and will not trigger the fourth amendment. *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386.

Defendant contends, however, that he was not free to disregard the officer's request because he was "confined"—albeit by his own choice—in the car. In rejecting that contention, we find the Supreme Court's opinion in *Bostick* dispositive.

In *Bostick*, the Supreme Court considered whether a passenger on a public bus was seized as a result of several police officers asking him questions. The *Bostick* Court held as follows:

> "When police attempt to question a person who is walking down the street or through an airport lobby, it makes sense to inquire whether a reasonable person would feel free to continue walking. But when the person is seated on a bus and has no desire to leave, the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter.

> \* \* \*

> \*\*\* In such a situation, the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." (*Bostick*, 501 U.S. at 435-36, 115 L. Ed. 2d at 399-400, 111 S. Ct. at 2387.)

The Court then noted that an individual may refuse an officer's request without fearing prosecution because a refusal to cooperate is insufficient to furnish the objective justification required for a detention or seizure. *Bostick*, 501 U.S. at 437, 115 L. Ed. 2d at 400, 111 S. Ct. at 2387.

We deem this case analytically indistinguishable from *Bostick*. In both cases, (1) the defendant was a passenger in a stopped vehicle, (2) the police officers were lawfully present, (3) the officers did not have probable cause or reasonable grounds to suspect the defendant was engaged in criminal activity, (4) the officers requested the cooperation of the defendant, and (5) because of their seated position in the vehicle, both defendants claimed they did not feel free to leave.

However, the appropriate test in this type of case is not whether a reasonable person would feel free to leave, but whether a reasonable person would feel free *to decline the officer's request*. As in *Bostick*, the evidence in this case indicates that the officer's weapon was not displayed or pointed at defendant, and the officer did not otherwise threaten defendant or indicate that his compliance was required. See *Bostick*, 501 U.S. at 437, 115 L. Ed. 2d at 400, 111 S. Ct. at 2388; *Cole*, 256 Ill. App. 3d at 594-95, 627 N.E.2d at 1190.

We emphasize that this case does not involve the officer's stopping or restraining defendant in order for the officer to question him. Defendant was "otherwise lawfully stopped" as a result of his being a passenger in the vehicle the officer pulled over for a traffic violation.

Because the officer's request for identification did not constitute even a minimal "seizure," such as stopping a person to question him as he lawfully walked down a sidewalk, the officer was not required to have any legal justification—such as probable cause or reasonable suspicion—to support that request. We also emphasize that even though an officer is free to ask questions of an otherwise lawfully stopped individual without any justification, that does not mean the officer can require an answer.

In *People v. Jennings* (1989), 185 Ill. App. 3d 164, 169, 541 N.E.2d 155, 158, a police officer stopped a car for speeding and obtained identification from both the driver and passenger. The defendant in *Jennings* was the passenger. This court stated that because "the trooper did not possess the authority to *demand* the production of [the] defendant's driver's license," the officer unlawfully seized defendant. (Emphasis added.) (*Jennings*, 185 Ill. App. 3d at 169, 541 N.E.2d at 158.) Consequently, we held that the officer could not *require* the defendant to comply with his request.

■ That result is consistent with our holding here. As the Supreme Court stated in *Bostick*, the correct test is whether a reasonable person in the defendant's position would feel free to decline the officer's request. (See *Bostick*, 501 U.S. at 436, 115 L. Ed. 2d at 400, 111 S. Ct. at 2387.) "The encounter may be characterized as [an unlawful] seizure if the officer orders, rather than requests, that the [individual comply]." (*Murray*, 137 Ill. 2d at 393, 560 N.E.2d at 314.) This is because an officer demanding or otherwise requiring an individual to comply would vitiate the voluntariness of the person's cooperation. A reasonable person may voluntarily comply with an officer's mere request, but would not "feel free to decline" an officer's order. As a result, the trial court must decide as a question of fact whether a reasonable person in the defendant's position would have felt free to decline the officer's request in a given factual situation.

Defendant also points out that the trial court relied upon this court's opinion in *People v. Salvator* (1992), 236 Ill. App. 3d 824, 602 N.E.2d 953, in denying his motion to suppress. In *Salvator*, we held that "a police officer may lawfully order the passenger in a vehicle the officer has lawfully stopped to get out of the vehicle." (*Salvator*, 236 Ill. App. 3d at 840, 602 N.E.2d at 963.) Defendant seeks to distinguish *Salvator* because in this case, the officer asked the passenger—defendant—for identification rather than ordering him to exit the car. Defendant contends that the rationale of protecting the officer's safety by removing passengers from a stopped car—and access to a weapon in the car—does not apply in this case because "there is no justification for demanding or requesting identification

from a passenger involved in a minor traffic stop." We view the matter differently.

In *Salvator*, this court found permissible an officer's order for passengers in a lawfully stopped car to exit that vehicle. (*Salvator*, 236 Ill. App. 3d at 840, 602 N.E.2d at 963.) In this case, the officer merely asked each passenger for identification. We consider this conduct far less intrusive than that approved in *Salvator*.

Defendant further notes that the officer here did not specifically inform him that he was not required to comply with the request for identification. In *Bostick*, the police officers did indicate to the defendant that he could refuse to cooperate. (*Bostick*, 501 U.S. at 437, 115 L. Ed. 2d at 400, 111 S. Ct. at 2388.) However, we deem this distinction irrelevant.

■ It is well settled that the "knowledge of a right to refuse is not a prerequisite of a voluntary consent." (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 234, 36 L. Ed. 2d 854, 867, 93 S. Ct. 2041, 2051; see also *People v. Spriegel* (1992), 233 Ill. App. 3d 490, 493, 599 N.E.2d 191, 193.) Defendant could voluntarily cooperate with the officer's request without specifically knowing he was not required to do so. Accordingly, we hold that the officer was not required to provide a *Miranda*-type warning to defendant of his right to refuse to cooperate with the officer's request. See *Spriegel*, 233 Ill. App. 3d at 493, 599 N.E.2d at 193.

The burden of proof at a motion to suppress rests upon the defendant. (See *Clark*, 185 Ill. App. 3d at 238, 541 N.E.2d at 203.) The trial court considered the evidence presented at the hearing and denied the motion, thereby concluding that defendant failed to prove that the officer's request for identification was a coercive demand constituting a seizure triggering the protection of the fourth amendment. We cannot say this ruling is against the manifest weight of the evidence. See *Murray*, 137 Ill. 2d at 387, 560 N.E.2d at 311.

### III. CONCLUSION

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

COOK and GREEN, JJ., concur.