THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAMASO LUNA, Defendant-Appellant.

Second District   No. 2—00—0442

Opinion filed June 13, 2001.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, State's Attorneys Appellate Prosecutor's Office, of counsel), and Robert E. Davison, of DePaepe & Davison, of Springfield, for the People.

James A. Maloney, of James A. Maloney & Associates, of Loves Park, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Damaso Luna, was charged by indictment with unlawful possession with intent to deliver more than 15 grams of cocaine (720 ILCS 570/401(a)(2)(A) (West 1998)). The defendant moved to suppress the drug evidence as being unlawfully seized. The trial court granted the motion and denied the State's motion to reconsider. The State filed a certificate of impairment pursuant to Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)). We affirm.

The arresting officer and the defendant were the only two witnesses to testify at the suppression hearing. Officer Brian Martin of the Loves Park police department testified that on February 26, 1999, at about 7 p.m., he met with police sergeant Lynde. Sergeant Lynde told him that he had received an anonymous tip that there was going to be a drug transaction behind the Brew Haus tavern in Loves Park. The drug transaction would involve either a white mini-van, a black Pontiac, or a blue pickup truck. Sergeant Lynde also informed Officer Martin that the drug transaction would involve a person named "Damaso."

Officer Martin participated in a stakeout of the tavern until about 7:17 p.m, when he saw a white mini-van leave the parking lot. Sergeant Lynde told Officer Martin to follow the vehicle and stop it if probable cause developed, that is, if he "observed a motor vehicle violation." Officer Martin followed the vehicle for about three miles until he noticed that the light on the vehicle's rear license plate was

not working. Officer Martin then stopped the vehicle. Prior to stopping the vehicle, Officer Martin had spoken with Sergeant Lynde several times over his police radio.

After stopping the vehicle, Officer Martin walked up to the driver of the vehicle, the defendant, and requested his driver's license and insurance card. After "immediately" receiving these forms from the defendant, Officer Martin returned to his police car and began filling out a written warning form. Officer Martin testified that it usually takes him less than three minutes to talk to a motorist and to return to his car to write out a warning. Officer Martin additionally testified that, on the average, it takes him about two to three minutes to fill out the written warning form. Officer Martin listed 7:22 p.m. as the time of the traffic stop. Officer Martin testified that he received this precise time from the dispatcher.

While he was writing out the warning, other officers, including Sergeant Lynde, arrived at the scene. Sergeant Lynde brought with him a drug-sniffing dog. Officer Martin recognized the dog as one that had been used on other occasions to sniff out narcotics and was trained for that purpose. Sergeant Lynde walked the dog around the vehicle, and the dog "alerted," indicating the possible presence of narcotics in the vehicle.

Officer Martin testified that, after Sergeant Lynde informed him of the "canine alert," he believed that he had probable cause to search the vehicle. Officer Martin then walked to the defendant's vehicle and returned his driver's license and proof of insurance. Officer Martin also explained to the defendant the warning citation. He then asked the defendant if he could search the vehicle. The defendant said "no" and attempted to pull away. Officer Martin directed the defendant to stop and told him to get out of the vehicle. He then observed the defendant place his hands in a Kleenex box. He told the defendant to take his hands out of the box. The defendant then got out of the vehicle.

Officer Martin testified that he searched the vehicle. In the Kleenex box he found "one Baggie containing white powder residue and five Baggie corners containing a white powder." Based upon his experience and training, he believed the substance to be cocaine. The defendant was subsequently taken into custody.

On cross-examination, Officer Martin testified that, as he was writing out the warning ticket, he did not know that other officers would potentially be on their way to the scene. He also testified that he had no idea that Sergeant Lynde would be arriving with a dog. However, he later testified that he believed there was going to be a follow-up investigation of the defendant and that other officers would be arriving at the scene of the traffic stop.

The defendant testified that he was stopped by Officer Martin on February 26, 1999. After the stop, he gave Officer Martin his driver's license and insurance card. This information was returned to him about 25 minutes later. After another five minutes, Officer Martin then asked him if he could search his vehicle. He did not give Officer Martin permission to search, but he did get out of his vehicle when he was asked to do so. On cross-examination, the defendant testified that he did not see any other police vehicles until he was ready to leave.

Following argument, the trial court granted the defendant's motion to suppress evidence and quash arrest. The trial court first explained that, based on *People v. Campbell*, 67 Ill. 2d 308 (1977), there was no probable cause to search the defendant's vehicle because the State failed "to produce evidence concerning the qualification of the dog used in this case." The trial court found that, under *Campbell*, the expertise of the dog was a necessary element to find probable cause to search the defendant's vehicle.

The trial court additionally found that, pursuant to *People v. Brownlee*, 186 Ill. 2d 501 (1999), suppression was warranted because Officer Martin engaged in a "stall" at the scene of the stop. In so ruling, the trial court noted that the defendant testified that 25 minutes elapsed between the time he was stopped and when he got his driver's license back. The trial court also found that there were credibility problems with Officer Martin's testimony. The trial court noted that Officer Martin had "precise times" for certain things, such as when he received the initial radio message, when he began the stakeout, and the time the defendant's vehicle was stopped; however, he was only able to estimate the time when Sergeant Lynde arrived at the scene of the traffic stop. The trial court also noted that, on cross-examination, Officer Martin testified that he did not know other officers were on their way and that Sergeant Lynde was coming with a dog. However, Officer Martin later admitted that he believed there would be a follow-up investigation and that other officers were going to arrive at the scene.

The State subsequently filed a motion to reconsider. In denying the motion, the trial court stated that the case came "down to an issue of credibility" and that Officer Martin's testimony was not credible. The trial court explained that Officer Martin lost his credibility when he stated that he did not know that other officers would be on their way to his traffic stop of the defendant. The State thereafter filed a certificate of impairment pursuant to Rule 604(a)(1).

On appeal, the State argues that the trial court erred in granting the defendant's motion to suppress. Specifically, the State contends that the trial court erred in finding (1) that the qualifications of the

drug-sniffing dog were not established; and (2) that Officer Martin stalled after stopping the defendant until other police officers could arrive at the scene with a drug-sniffing dog. Because we believe the trial court's finding that Officer Martin stalled after stopping the defendant is dispositive of this appeal, we will address that issue first.

■ On a motion to suppress evidence, the defendant has the burden of showing that the search and seizure were unlawful. 725 ILCS 5/114—12(b) (West 1998); *People v. Janis*, 139 Ill. 2d 300, 308 (1990). However, once the defendant makes a *prima facie* showing that the search and seizure were unlawful, the burden shifts to the State to come forward with evidence justifying the intrusion. *People v. Graf*, 265 Ill. App. 3d 746, 750 (1994).

■ Here, there is no dispute that the defendant was properly stopped for not having a working light over his rear license plate. A usual traffic stop, such as this one, is considered a *Terry* stop rather than a formal arrest. *People v. Stewart*, 242 Ill. App. 3d 599, 605 (1993). A *Terry* stop contemplates a brief intrusion, as minimal as possible, to verify information or to ascertain whether criminal activities have in fact taken place. *People v. Frazier*, 248 Ill. App. 3d 6, 14 (1993). The investigative intention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *People v. Brownlee*, 186 Ill. 2d 501, 519 (1999).

■ When a police officer stops a vehicle for a minor traffic violation, the officer may briefly detain the driver to request a valid driver's license. *People v. Jennings*, 185 Ill. App. 3d 164, 169 (1989). If no further suspicion is aroused in the officer following these initial inquiries, the traffic stop may go no further and the individual should no longer be detained. *Brownlee*, 186 Ill. 2d at 520-21. An officer may not stall at the scene of a traffic stop until a drug-sniffing dog arrives and creates probable cause to conduct a search of a vehicle. *People v. Koutsakis*, 272 Ill. App. 3d 159, 163 (1995).

Here, the only evidence the State presented as to the circumstances of the stop was through Officer Martin's testimony. However, the trial court found that Officer Martin's testimony was not credible. The trial court explained that (1) there were contradictions in his testimony; (2) he testified only generally as to the time between the traffic stop and the search, although precisely about other events; and (3) his statement that he did not know that other police officers would be arriving at the scene of the traffic stop was not believable. The State argues that the trial court's credibility determination of Officer Martin was manifestly erroneous.

■ In ruling on a motion to suppress, the trial court is best suited to assess the credibility of the witnesses and weigh their testimony.

*People v. Smith*, 266 Ill. App. 3d 362, 364 (1994). The trial court's ruling is entitled to great deference. *Smith*, 266 Ill. App. 3d at 364. Accordingly, the trial court's determination of factual matters in a hearing on a motion to suppress will not be disturbed unless it is manifestly erroneous. *People v. Free*, 94 Ill. 2d 378, 401 (1983).

■ Based on our review of the record, we cannot say that the trial court's credibility determination of Officer Martin was manifestly erroneous. The record supports the trial court's finding that Officer Martin testified fairly specifically for certain events prior to the search of the defendant's vehicle but only generally as to when Sergeant Lynde arrived and when the search was conducted. The record also reveals an inconsistency in Officer Martin's testimony. Officer Martin testified at one point that he did not know that other officers were potentially on their way to the scene of the traffic stop. Shortly thereafter, however, he testified that he believed other officers would be arriving at the scene. In light of the fact that Officer Martin had been part of a police stakeout with multiple officers for the express purpose of apprehending the defendant, we also agree with the trial court regarding the implausibility of Officer Martin's statement that he did not know that other officers were on their way to the scene of the traffic stop. As the trial court's credibility determination of Officer Martin was not manifestly erroneous, we cannot say the trial court erred in granting the motion to suppress.

Based on our resolution of this issue, we need not address whether the trial court erred in finding that the qualifications of the drug-sniffing dog had not been established.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

McLAREN and GROMETER, JJ., concur.