THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ERIC C. CARLSON, Defendant-Appellee.

Third District    No. 3—98—1020

Opinion filed September 1, 1999.

Baron S. Heintz, State's Attorney, of Aledo (John X. Breslin and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Herbert F. Schultz, of Rock Island, for appellee.

JUSTICE HOMER delivered the opinion of the court:

The defendant, Eric C. Carlson, was arrested for driving under the influence of alcohol (DUI). He submitted to a breathalyzer test, which disclosed a blood-alcohol concentration of .10, and his driver's license was summarily suspended (625 ILCS 5/11—501.1 (West 1998)). The defendant filed a petition to rescind the suspension based on an illegal arrest (625 ILCS 5/2—118.1(b) (West 1998)). The trial court granted the petition, and the State appeals. We reverse and remand for further proceedings.

## FACTS

At the rescission hearing, Mercer County Sheriff's Deputy Gordon

Nichols testified in the defendant's case in chief as an adverse witness. Nichols testified that around 3 a.m. on October 9, 1998, he observed the defendant's vehicle parked along the side of Spur Road at the intersection with Illinois Route 17. Nichols observed no one in the vehicle as he drove by; no lights were on and no exhaust was being emitted. He pulled up behind the vehicle, activated his emergency flashers and approached on foot to investigate. The defendant appeared unconscious in the driver's seat. Nichols could not tell if he was alive or dead. The keys were in the ignition and there was condensation on the windshield. No one else was in the vicinity.

Nichols tapped on the window and awakened the defendant, who initially moved his hand as if to smoke a cigarette that was not there. At Nichols' request, the defendant rolled down the window. Nichols immediately detected a strong odor of alcohol. After the defendant identified himself, Nichols asked him to step outside and produce a driver's license. Nichols said the defendant had trouble locating his license; he had bloodshot eyes; he was unsteady and confused; and he appeared to have wet himself. Nichols also observed a cigarette that had extinguished itself beside the seat. The defendant told Nichols he was waiting for a ride. Nichols then arrested the defendant and transported him to the county jail, where he was given statutory warnings and subsequently failed a breathalyzer test.

Following Nichols' testimony, the State introduced Nichols' sworn report of the arrest. No other evidence was presented. The trial court granted the defendant's petition, finding that the defendant was subjected to an unreasonable search and seizure.

## ANALYSIS

On appeal, the State argues that the trial court's ruling is manifestly erroneous and must be reversed because the defendant failed to make a *prima facia* case that he was entitled to rescission.

■ The statutory summary suspension of a defendant's driver's license may be rescinded upon evidence that, at the time of the defendant's arrest, the officer lacked reasonable grounds to believe that the defendant was driving or in actual physical control of a motor vehicle while under the influence of alcohol or other drugs. 625 ILCS 5/2—118.1(b) (West 1998). In a hearing on a petition to rescind, the defendant bears the burden of proof by a preponderance of the evidence. *People v. Hood*, 265 Ill. App. 3d 232, 638 N.E.2d 264 (1994). Once the defendant presents a *prima facie* case for rescission, the State must then come forward with evidence justifying the summary suspension of driving privileges. *People v. Orth*, 124 Ill. 2d 326, 530 N.E.2d 210 (1988). Generally, a trial court's ruling on a petition to re-

scind a summary suspension is entitled to great deference and will not be reversed unless it was against the manifest weight of the evidence. *People v. Smith*, 266 Ill. App. 3d 362, 640 N.E.2d 647 (1994)). A determination is against the manifest weight of the evidence when the opposite conclusion is clearly evident from the record. *Hood*, 265 Ill. App. 3d 232, 638 N.E.2d 264.

The trial court in this case ruled that Nichols' encounter with the defendant was a seizure for fourth amendment purposes when Nichols asked him to step out of his car. At that point, the court found, Nichols lacked even a reasonable suspicion of criminal activity. Therefore, the court concluded, the defendant was illegally arrested and entitled to rescission of the statutory summary suspension of his driver's license.

■■■ There are three recognized tiers of police-citizen encounters. *People v. Murray*, 137 Ill. 2d 382, 560 N.E.2d 309 (1990). Whether an encounter constitutes (1) an arrest, (2) a *"Terry"* stop (see *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) or (3) a "community caretaking" function depends on the degree of the intrusion or coerciveness surrounding the detention. *Murray*, 137 Ill. 2d 382, 560 N.E.2d 309. To survive fourth amendment scrutiny, an arrest must be supported by probable cause, and a *Terry* stop requires the officer's reasonable suspicion of criminal activity. By contrast, a "community caretaking" encounter does not involve a "seizure" of the citizen. *Murray*, 137 Ill. 2d 382, 560 N.E.2d 309. Thus, the police may question a citizen without triggering fourth amendment protections during a "community caretaking" encounter, so long as the officer does not convey by use of force or a show of authority that compliance with his inquiry is required. *Florida v. Bostick*, 501 U.S. 429, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991). Compelled compliance may be shown by: (1) the presence of several police officers; (2) the display of a weapon; (3) an officer's physical contact with the citizen; and (4) an officer's use of language or tone of voice commanding compliance. *Murray*, 137 Ill. 2d 382, 560 N.E.2d 309; *Smith*, 266 Ill. App. 3d 362, 640 N.E.2d 647. In the absence of such factors, it has been held that an officer may peaceably approach a parked vehicle, awaken the sleeping driver and request that he step outside and show his driver's license, all within the officer's "community caretaking" function. *Murray*, 137 Ill. 2d 382, 560 N.E.2d 309; see also *People v. Crocker*, 267 Ill. App. 3d 343, 641 N.E.2d 1237 (1994).

■ In this case, the defendant failed to introduce any evidence that he felt compelled to comply with Nichols' request to roll down his window or that this initial request constituted a *Terry* stop or a "seizure." Nichols was alone and there was no evidence that he

displayed a weapon, made physical contact with the defendant, or used a commanding voice. Nichols testified that he could not recall whether his overhead lights were activated; however, even if they were, the defendant was asleep when Nichols approached, thereby dispelling any potentially threatening or coercive effect of Nichols' initial approach. Nichols testified that he could not tell if the defendant was alive until the defendant was roused and began fumbling as if to smoke a cigarette that was not there. Based on the evidence, it is clearly apparent that Nichols' initial encounter with the defendant was not a *Terry* stop or a "seizure," but fell squarely within the officer's "community caretaking" functions. See *Murray*, 137 Ill. 2d 382, 560 N.E.2d 309; *Crocker*, 267 Ill. App. 3d 343, 641 N.E.2d 1237. When the window was opened, the officer immediately smelled a strong odor of alcohol. The officer at that point had an articulable suspicion that the defendant had violated section 11—501 of the Illinois Vehicle Code (625 ILCS 5/11—501 (West 1998)), and he was justified in asking the defendant to step outside for a further investigation pursuant to *Terry v. Ohio*. See *People v. Smith*, 224 Ill. App. 3d 511, 586 N.E.2d 785 (1992).

Once the defendant stepped outside, the totality of the circumstances, including the defendant's appearance, conduct and odor, gave Nichols reasonable grounds to believe that the defendant had committed the offense of DUI. At that point, the officer had probable cause to arrest the defendant, and he did so. See *Crocker*, 267 Ill. App. 3d 343, 641 N.E.2d 1237.

In sum, we conclude that the defendant failed to establish a *prima facie* case entitling him to a rescission of the statutory summary suspension of his driver's license. Accordingly, we reverse the trial court's ruling granting the defendant's petition.

## CONCLUSION

For the reasons stated, we reverse the judgment of the circuit court of Mercer County and remand for further proceedings consistent with this opinion.

Reversed and remanded.

LYTTON and KOEHLER, JJ., concur.