# Illinois Official Reports

## Appellate Court

---

### *People v. Wuckert*, 2015 IL App (2d) 150058

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KARL WUCKERT, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-15-0058 |
| Filed | December 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 13-DT-1045; the Hon. Robert J. Morrow, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Joseph A. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Victoria E. Jozef, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Michael J. Pelletier, Thomas A. Lilien, and Fletcher P. Hamill, all of State Appellate Defender's Office, of Elgin, for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion. Justices Hutchinson and Zenoff concurred in the judgment and opinion. |

¶ 1 Defendant, Karl Wuckert, was charged with driving under the influence of intoxicating compounds (DUI) (625 ILCS 5/11-501(a)(6) (West 2012)). He moved to suppress evidence that was allegedly the product of an illegal arrest. The trial court granted the motion but, on reconsideration, allowed the results of a urine test that hospital personnel administered to defendant shortly after his arrest. On defendant's subsequent motion, the court ultimately suppressed the test results. The State appeals. We reverse and remand.

¶ 2 At the hearing on defendant's motion to suppress, he testified as follows. On the evening of October 11, 2013, while driving his Ford Explorer at or near the 35-mile-per-hour speed limit on Sleepy Hollow Road, he swerved to avoid hitting a deer, then swerved again to avoid another deer. The Explorer hit a pole and spun around. The crash activated the vehicle's airbags and knocked defendant unconscious. When he came to, a Sleepy Hollow police officer showed up, followed by a sheriff's deputy. Defendant exited the vehicle and told them that he had swerved to avoid a deer, losing control of the vehicle. He said that he had used no alcohol or drugs and that none were in the vehicle. The Explorer's center console held a "one-hitter box," a device commonly used to smoke cannabis but also to smoke tobacco. The officers had defendant perform the walk-and-turn and one-legged-stand tests. They did not tell him that he was under arrest. An ambulance arrived; the driver asked to take him to the hospital as a precaution. Defendant consented.

¶ 3 Andrew Schwab, a Kane County sheriff's deputy, testified as follows. On October 11, 2013, at about 9:56 p.m., he was dispatched to the accident scene. Two Sleepy Hollow officers were there. Defendant's vehicle was in the roadway, facing east in the southbound lane, heavily damaged. Schwab heard the ignition alarm "dinging," so, for safety, he went to remove the key and shut off the ignition. As he approached the door, the window was open, and he smelled a faint odor of cannabis. As he shut off the ignition, he saw in plain view on the center console a "one-hitter box," an item commonly used to smoke cannabis. The one-hitter box could have been purchased legally at a "head shop." Schwab did not open it but later informed his supervisor, Deputy Justin Douglas, of its presence. Schwab did not find cannabis in the vehicle. He backed up slightly; defendant shut the door and told him to stay out of the vehicle. Defendant was not bleeding and did not appear seriously injured. His breath did not smell of alcohol or cannabis. His speech was clear, and he was cooperative.

¶ 4 Defendant rested. The State called Douglas, who testified as follows. When he arrived at the accident scene, he saw the Ford Explorer facing east in the southbound lane of Sleepy Hollow Road. Defendant was standing outside; his eyes were bloodshot and he looked slightly disoriented. Defendant said that he had been traveling west when a deer jumped out in front of him and he swerved to avoid it. Douglas found this statement odd, since Sleepy Hollow Road runs north-south. Defendant said that he had been going 30 miles per hour, which seemed inconsistent with the severe damage to the vehicle.

¶ 5 Douglas testified that defendant failed both the walk-and-turn test and the one-legged-stand test. At some point, Schwab told Douglas about the cannabis odor and the one-hitter box. Douglas placed defendant under arrest. An ambulance drove defendant to the hospital. Douglas drove by himself to the hospital. There, he spoke to a nurse with nobody else present. Over defendant's objection on foundational and relevance grounds, Douglas

testified that the nurse told him that defendant's urine specimen had been taken to the lab. Defendant renewed his objection to further testimony about Douglas's conversation with the nurse; this time, the court sustained the objection.

¶ 6 After hearing arguments, the trial judge granted defendant's motion, explaining that the police had lacked probable cause to arrest defendant for DUI or possessing drug paraphernalia.

¶ 7 The State moved to reconsider. In addition to arguing that the arrest had been valid, the State contended that the court should not suppress the results of the urine test. (The State proffered that the test disclosed the presence of cannabis in defendant's system.) The State reasoned that there was no causal connection between the arrest and the urine test, because defendant had voluntarily gone to the hospital even before he knew that he was under arrest. Defendant argued that the urine test had resulted from the illegal arrest; had there been no arrest, there would have been no test. The State replied that defendant had agreed to go to the hospital as a precaution and would have done so regardless of whether the police ever arrested him. Further, the test was taken solely for medical reasons, not because the police requested it.

¶ 8 The trial court denied the motion to reconsider, except that it modified its ruling to allow the results of the urine test if the State could supply the proper foundation. The judge explained that, if hospital personnel had tested defendant without police prompting or any intent to use the results for law enforcement purposes, then the evidence was not the product of the illegal arrest.

¶ 9 Defendant moved to reconsider and clarify the judge's ruling. His motion alleged: that the emergency room nurse had told him that he had to provide a urine sample in order to be treated; that she had assured him that the sample would be used solely for medical purposes and that the results would not be provided to the police; and that, relying on these representations, he had provided a urine sample that was later tested at the hospital lab.

¶ 10 Defendant's motion argued that, because the test was not conducted properly and there was no proper chain of custody, the results should not be admitted. Further, he argued, because he was assured that the test was strictly for medical purposes, the results should be barred at trial. Defendant contended that independent testing was the only way to protect his due process rights.

¶ 11 Defendant's motion attached a copy of a hospital record summarizing the test results. It states: "Specimen analysis was performed without chain of custody handling. These results should be used for medical purposes only and not for any legal purposes." Defendant requested that the trial court reconsider its ruling conditionally allowing the introduction of the test results.

¶ 12 The court held a hearing on defendant's motion.[1] The prosecutor argued that the foundational requirements for admitting the results were governed by section 11-501.4 of the Illinois Vehicle Code (625 ILCS 5/11-501.4 (West 2012)) and that the cautionary language in the hospital document went to the weight to be given the results, not their admissibility. Further, the prosecutor noted, defendant had voluntarily gone to the hospital, when he did not

---

[1]The record contains a notice of defendant's motion to reconsider and clarify the judge's ruling, but the record does not include the motion. The order setting the hearing indicated that the case was continued for the motion to reconsider and clarify.

believe that he was under arrest, and Douglas had testified that he had no role in procuring the test. Defendant responded that, although the hospital personnel had not acted as agents of the police, the police had obtained the results by "dishonest" means, as the hospital had assured him that the test was solely for medical purposes. Also, he contended, the deficiencies in the chain of custody and the cautionary language in the summary went to the results' admissibility, not merely their weight.

¶ 13    The trial judge noted that the summary stated that the results should not be used for law enforcement purposes. The prosecutor responded that section 11-501.4 trumped the hospital policy by specifically allowing the admission of the results of chemical tests of blood or urine if the tests were performed in the regular course of providing emergency medical treatment and the other foundational requirements are met (see 625 ILCS 5/11-501.4(a) (West 2012)).

¶ 14    Defendant argued that the statute allowed the admission only of prearrest test results and that the results here were obtained after defendant was arrested. He argued second that the use of postarrest test results would violate medical privacy laws, and third that the results were inadmissible because there was no chain of custody. The prosecutor responded that (1) the statute does not distinguish between prearrest and postarrest testing; (2) it specifically states that "[t]he confidentiality provisions of law pertaining to medical records and medical treatment shall not be applicable with regard to chemical tests performed upon an individual's blood or urine under the provisions of this Section" (625 ILCS 5/11-501.4(b) (West 2012)); and (3) any problems with the chain of custody went to the evidence's weight, not its admissibility.

¶ 15    The judge stated as follows. The nurse who performed the test was not a state actor. However, because she assured defendant that the test was solely for medical purposes, he had provided the sample "without a fair statement of what the effect of giving it [was]." When the sample was taken, defendant had been "technically in the custody of the police," so the testing violated his "rights." The court granted defendant's motion and barred the State from using the test results at trial. The State appealed (see Ill. S. Ct. R. 604(a)(1) (eff. Dec. 11, 2014)).

¶ 16    On appeal, the State contends that the trial court erred in suppressing the results of the urine test. The State argues that section 11-501.4 makes no distinction between prearrest and postarrest testing but allows the admission of the results of any test if the foundational requirements are met. The State requests that we reverse the trial court's suppression of the test results and remand the cause so that the State can establish the proper foundation.

¶ 17    In response, defendant concedes that section 11-501.4 does not distinguish between prearrest testing and postarrest testing and that the order cannot be affirmed on statutory grounds. Defendant, however, contends that the suppression of the urine test results was proper on fourth amendment grounds, because the test was the product of the illegal arrest. In reply, the State argues that it proved that the test was not the product of the arrest or any other State action: the trial judge found that the hospital personnel who tested defendant did not act as agents of the police, and defendant admitted that he went to the hospital voluntarily as a precaution.

¶ 18    At the outset of our analysis, we note that the trial court's reasoning is not altogether clear. We cannot say whether, in suppressing the results of the urine test, the court relied solely on the statute, solely on fourth amendment considerations, or on both. However, this

deficiency is not crucial: we review the court's judgment, not its reasoning, and we may affirm on any basis called for by the record. See *People v. Cleveland*, 342 Ill. App. 3d 912, 915 (2003); *People v. Mauricio*, 249 Ill. App. 3d 904, 910 (1993). Thus, we examine both the statutory and constitutional bases for the order. We conclude that neither is sufficient.

¶ 19　　First, we agree with the parties that section 11-501.4 does not support the suppression of the test results. Section 11-501.4 reads (as pertinent here):

"(a) Notwithstanding any other provision of law, the results of blood or urine tests performed for the purpose of determining the content of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof, of an individual's blood or urine conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of Section 11-501 of this Code or a similar provision of a local ordinance ***." 625 ILCS 5/11-501.4(a) (West 2012).

¶ 20　　This language makes no distinction between prearrest testing and postarrest testing. Instead, it makes test results such as those at issue here admissible, with a proper foundation, regardless of the timing of the test. When a statute is unambiguous, we must apply it as written and may not read in exceptions, conditions, or limitations that the legislature did not express. *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). Therefore, that defendant was tested after he was arrested[2] has no bearing on whether section 11-501.4 barred the test results. It did not.

¶ 21　　We turn to the constitutional issue. The State contends that, although defendant was arrested illegally, the test results were not tainted by the arrest, as they were the product of actions by hospital employees not acting at the instigation or prompting of the police. Defendant responds that, because the test resulted from the arrest, the results must be suppressed as the fruit of the illegality. For the following reasons, we agree with the State.

¶ 22　　Because the pertinent facts are essentially undisputed, the constitutional issue is a question of law, and our review is *de novo*. See *People v. Close*, 238 Ill. 2d 497, 504 (2010). The facts are as follows. After Douglas placed him under arrest, defendant voluntarily agreed to ride the ambulance to the hospital for testing. Douglas followed in his squad car. At the hospital, hospital personnel tested defendant's urine. The hospital issued a document informing defendant that the test was performed for strictly medical purposes and should not be used for law enforcement. However, section 11-501.4-1 required the hospital to disclose the results to law enforcement personnel upon request. 625 ILCS 5/11-501.4-1 (West 2012). Douglas spoke to the nurse who performed the test and received notice of the test results, but there was no evidence that he suggested the test.

¶ 23　　The trial court found that the nurse who decided upon and performed the urine test was not acting as an agent of the police. This conclusion was correct; indeed, defendant does not contend otherwise on appeal. Defendant went to the hospital voluntarily and, even if he consented to the urine test under the misimpression that the results could not be used against him in court, his mistaken understanding of the law was not the product of police deception or subterfuge. The court was perturbed that defendant consented to the test under a

_____

[2]The trial judge found that Douglas arrested defendant at the accident scene, before defendant went to the hospital. A contrary finding would not have changed our analysis.

misimpression created by the hospital personnel. But that circumstance, however unfortunate, was not a legally sound basis to suppress the test results.

¶ 24     In *People v. Poncar*, 323 Ill. App. 3d 702 (2001), the police stopped the defendant for a traffic offense and then arrested him for DUI and transported him to the police station. There, the defendant was injured while struggling with officers, and he was taken, without his consent, to the hospital. In the emergency room, hospital personnel tested his blood for evidence of possible intoxication, then treated his injuries. *Id.* at 704. Later, the State charged the defendant with aggravated DUI, and he moved to suppress the results of the blood test. The trial court granted the motion. *Id.* at 705.

¶ 25     This court reversed. We held first that the test results were admissible under section 11-501.4 as long as the State could lay the proper foundation. *Id.* at 706. We then held that the fourth amendment did not bar the admission of the test results. Although the trial court had reasoned that excluding test results in a situation such as the one in *Poncar* could discourage police misconduct that causes injury to people in custody (*id.*), we explained that, under *People v. Yant*, 210 Ill. App. 3d 961, 965 (1991), the test results would be admissible unless the test was the result of "police subterfuge." *Poncar*, 323 Ill. App. 3d at 707.

¶ 26     In *Yant*, the defendant was in an automobile accident and was taken, in restraints, to the hospital. Without his consent, the physician on duty ordered a blood test on the defendant, who was uncooperative and still in restraints. After the defendant was charged with DUI, he moved to suppress the test results. The trial court granted the motion. *Yant*, 210 Ill. App. 3d at 962-63.

¶ 27     This court reversed. After disposing of any statutory grounds for the suppression order, we explained that in general, under *Schmerber v. California*, 384 U.S. 757 (1966), the taking of a blood sample under reasonable medical circumstances does not violate the fourth amendment. *Yant*, 210 Ill. App. 3d at 965 (citing U.S. Const., amend. IV). In *Yant*, the defendant's injuries justified taking him to the hospital, and the continuing physical restraint was appropriate. Further, we noted, there was "no indication in the record that either the emergency restraints or the physician's blood test order here was a subterfuge procured by the police or any form of State action." *Id.*

¶ 28     *Poncar* and *Yant* implicitly rely on a principle that case law elsewhere has made explicit: that the fourth amendment is not triggered by the actions of private parties unless they act as agents of the State. Therefore, because the test results here were procured by a nurse who was not acting as a State agent (as defendant conceded in the trial court), neither the test nor the hospital's disclosure of the results to the police, as the statute required, violated defendant's rights.

¶ 29     The fourth amendment does not apply to a search or seizure, however unreasonable, effected by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). As defendant has conceded that the nurse did not act as an agent of the government when she performed the urine test, his argument that the test was the product of the illegal arrest is legally irrelevant: the State did not need to prove that the test results were not the fruit of the illegal arrest. The State has this burden "only *** where the evidence sought to be suppressed was actually obtained as a result of some illegal government activity." *People v. Lovejoy*, 235 Ill. 2d 97, 130 (2009). Here, the condition was not met: the evidence that defendant sought to suppress was the result of private agents' acts.

¶ 30      Although the foregoing principles dispose of this case, we also note that foreign authority overwhelmingly holds that the fourth amendment is not implicated when medical personnel perform chemical tests on alleged DUI offenders and, per statutory requirements, divulge the results to the police or prosecutors. *E.g.*, *People v. Perlos*, 462 N.W.2d 310, 316-18 (Mich. 1990) (testing did not implicate fourth amendment; disclosure of results to police did not implicate fourth amendment, as statutory requirement dispelled any reasonable expectation of privacy in results); see also *State v. Hardy*, 963 S.W.2d 516, 525-27 (Tex. Crim. App. 1997) (accord); *State v. Jenkins*, 259 N.W.2d 109, 111-13 (Wis. 1977) (accord).

¶ 31      We hold that the trial court erred in suppressing the results of the urine test that hospital personnel performed on defendant. Therefore, we reverse the trial court's suppression of this evidence, and we remand the cause so that the court may decide whether the State can satisfy the statutory requirements for the admission of the test results.

¶ 32      The order of the circuit court of Kane County is reversed, and the cause is remanded.

¶ 33      Reversed and remanded.