# Illinois Official Reports

## Appellate Court

---

### *People v. Bailey*, 2019 IL App (3d) 180396

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BENJAMIN C. BAILEY, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-18-0396 |
| Filed | May 6, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 17-DT-1028, 17-TR-61555, 17-TR-61556, 17-TR-61557; the Hon. Derek W. Ewanic, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>James E. Chadd, Peter A. Carusona, and Amber Hopkins-Reed, of State Appellate Defender's Office, of Ottawa, for appellee. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion Justices McDade and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1        After defendant, Benjamin C. Bailey, was charged with driving under the influence of alcohol (DUI), the circuit court granted his motion to suppress evidence. The State filed a certificate of substantial impairment, and this appeal followed. We affirm.

¶ 2                                              I. BACKGROUND

¶ 3        The State charged defendant with two counts of DUI (625 ILCS 5/11-501(a)(1), (a)(2) (West 2016)), as well as other traffic offenses. Defendant filed a motion to suppress evidence, alleging that the officer did not have probable cause to arrest him.

¶ 4        At the hearing on defendant's motion, Officer Terry Bailey of the Romeoville Police Department testified that he observed defendant driving a pickup truck at approximately 5 p.m. on September 10, 2017. Defendant was driving at a speed above the posted speed limit. Bailey agreed that speeding in itself was not an indicator of impairment. Bailey activated the lights in his squad car to initiate a traffic stop. He testified that defendant responded appropriately, indicating to him with a wave that he saw the lights and would turn off of the busy road that they were traveling on.

¶ 5        When Bailey approached defendant's vehicle, he first noticed that defendant "had an orange, greasy substance in his beard," which appeared to be some sort of food. Bailey asked defendant for his driver's license and proof of insurance. Bailey testified that defendant's "hands were very slow and deliberate" as he retrieved those items, but that defendant did not drop or fumble anything. He also noticed that defendant seemed "to be staring almost through me *** as if he was having a hard time focusing." Bailey asked defendant about the substance in his beard and learned that it was sauce from Buffalo Wild Wings, a restaurant at which defendant had recently eaten. Bailey testified that defendant had been unaware of the sauce in his beard. Bailey found it "unusual in general" that a person would have food on their face and not know about it.

¶ 6        Bailey testified that he did not notice anything unusual about defendant's eyes and did not observe anything unusual about defendant's speech. He did notice a "sweet odor" emanating from the vehicle, but he did not know what the odor was. Bailey also observed a purple can in the cup holder, but could not see the label or discern what was in the can. Bailey did not ask defendant what, if anything, was in the can.

¶ 7        After asking for defendant's license and proof of insurance, Bailey attempted to distract defendant from those tasks by asking a question. He explained that he used this distraction method as a way to gauge defendant's cognitive ability. Bailey testified that defendant "wasn't able to divide his attention between what I had asked and what he was supposed to be doing." Bailey then returned to his squad car and requested a second officer to the scene. Bailey began writing a ticket, "gave [defendant] a few minutes," then returned to defendant's vehicle to determine if defendant had located his insurance card. Defendant provided an insurance card, but it was expired. Bailey testified that he then returned again to his squad car "until Officer [Daniel] Ponzi arrived."

¶ 8        Once Ponzi arrived on the scene, the two officers approached defendant's vehicle. Bailey testified that "Officer Ponzi immediately asked [defendant] about *** open alcohol beverage containers *** on the back floorboard." Bailey had not previously noticed anything in the

backseat. Bailey testified that he could not tell if the cans were alcoholic beverage containers, but that "Officer Ponzi said that he could." Bailey then noticed that the purple can he observed when he first approached defendant's vehicle was no longer there. Bailey opined that the movement of the can indicated that defendant was attempting to hide it.

¶ 9 Bailey testified that he asked defendant to turn off the truck and give Bailey the keys. Defendant complied, and Bailey placed the keys on the top of the truck. Bailey testified that he then "attempted to open the back door to seize the cans that Officer Ponzi had seen." After discovering that the door was locked, Bailey asked defendant to unlock the doors. Defendant did not comply. Bailey asked a second time, and again defendant did not comply. Bailey testified: "I had seen there was a remote control for the vehicle on the key chain, so I used that to unlock the door. I opened the door and, yes, there were Lime-A-Rita[,] Straw-Ber-Rita[,] and Grape-A-Rita alcoholic beverage cans that were open in the back seat area." Bailey observed that the can he had noticed earlier in the cup holder was standing upright on the floorboard.

¶ 10 Bailey testified that he asked defendant to perform a series of tasks to determine if he was impaired by alcohol. These tasks included a counting test, an alphabet test, and a finger-movement test. Defendant failed to perform each of the tasks as instructed. When defendant refused to step out of the vehicle to perform standardized sobriety tests, Bailey placed him under arrest for DUI.

¶ 11 When defense counsel asked Bailey to elaborate on defendant's performance on the tasks, Bailey interjected, "Well, one of the other things that I had noticed was when I returned to the truck, he had now put sunglasses on as if trying to hide his eyes from me. And he had also begun to chew gum." Bailey testified on cross-examination that it is common for people to hide their eyes or attempt to mask odors on their breath with mints or gum to make it more difficult for officers to discern clues of impairment.

¶ 12 Bailey further testified that Ponzi did not tell him about the cans Ponzi observed on the back floorboard. Instead, he only heard Ponzi ask defendant about them. When asked if he requested that defendant unlock the truck because Bailey had "seen the cans," Bailey responded, "Yeah, I was aware of the cans there, yes." He testified that the cans were contraband and were in plain view. Each of the cans had a "slight residue" in them, except the one that Bailey had previously observed in the cup holder, which was approximately half full. Bailey observed that the can emitted a sweet odor like that which he had noticed when he first approached the vehicle.

¶ 13 At the conclusion of Bailey's testimony, the State moved for a directed verdict. Defense counsel argued that Bailey had acted without probable cause when he took defendant's keys and unlocked his truck. He also argued that the observations made after that point still did not amount to probable cause. The court denied the State's motion, finding that defendant had made a *prima facie* case.

¶ 14 The State called Ponzi, who testified that he was called to the scene of a traffic stop by Bailey at approximately 5 p.m. on September 10, 2017. Upon his arrival, he approached the passenger side of defendant's vehicle. Ponzi testified that when he did, he "saw an open aluminum cans [*sic*] in the back seat." On direct examination, the following exchange occurred:

"[THE STATE]: [C]ould you, at that time, see how many cans were back there?

[PONZI]: I couldn't identify 'em, no.

[THE STATE]: Could you identify what the cans were?

[PONZI]: I believe able to identify a couple of them, yes.

[THE STATE]: Okay. And what did you identify them as?

[PONZI]: Alcoholic beverages. One of 'em I could see was a larger can, it was a Straw-Ber-Rita.

[THE STATE]: Okay. And you could see there were other cans next to it?

[PONZI]: Correct.

[THE STATE]: Could you tell if the cans were open or closed at that point?

[PONZI]: I could tell that—at least the one was open."

¶ 15    On cross-examination, Ponzi agreed that he could not determine from outside the vehicle whether the cans he saw contained any alcohol. Defense counsel then asked if having open, empty cans was illegal. Ponzi replied: "It's an open alcohol container."

¶ 16    In ruling on defendant's motion, the court observed that Bailey had never testified as to what question he asked of defendant when he was attempting to distract him. The court also noted that defendant had a full beard and that it would be easy to not notice that sauce was on it. The court found that a reasonable person in defendant's position would feel that he was under arrest and not free to leave at the time Bailey took the keys to his vehicle. The court concluded: "I am going to grant the defendant's motion to suppress based on the fact that there was no probable cause to arrest the defendant at the time [Bailey] took the keys from him." Finally, in granting the motion to suppress, the court observed that the cans that were seized from defendant's vehicle were "certainly *** seized *** after the defendant was placed, unlawfully, under arrest."

¶ 17    The State filed a motion to reconsider. After a hearing, the court denied that motion. In so doing, the court commented that Bailey had put undue weight on the sauce in defendant's beard. The court also found that Bailey's suggestion that defendant's use of sunglasses was indicative of possible impairment hurt Bailey's credibility. The court again found that Bailey lacked probable cause at the time he took defendant's keys. The court continued:

"[W]hen [Bailey] ordered the defendant to give him his keys, he changed the nature of the stop from a stop for a traffic violation to a DUI investigation without reasonable suspicion—in the Court's opinion without reasonable suspicion to do so. And that's why I granted the motion initially."

Continuing its remarks, the court once again stressed that defendant would not feel free to leave at the point Bailey took his keys.

¶ 18                                    II. ANALYSIS

¶ 19    In this interlocutory appeal, the State contends that the circuit court erred in granting defendant's motion to suppress, arguing that Bailey did, in fact, have probable cause to arrest defendant at the end of the encounter.

¶ 20    When reviewing the circuit court's ruling on a motion to suppress evidence, we apply a two-part standard of review. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). Findings of fact made by the circuit court are reviewed for clear error and only reversed if they are against the manifest weight of the evidence. *Id.* However, the ultimate decision of whether suppression

is warranted is a question of law that is reviewed *de novo*. *People v. Harris*, 228 Ill. 2d 222, 230 (2008). "A reviewing court, however, remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted." *Luedemann*, 222 Ill. 2d at 542 (citing *People v. Pitman*, 211 Ill. 2d 502, 512 (2004)).

¶ 21 In its opening brief, the State asserts that "[t]he evidence was overwhelming that Officer Bailey had probable cause to arrest defendant for DUI." From there, the State recites the full body of evidence, including Bailey's entry into defendant's vehicle, his observation of alcoholic beverage cans, his discovery of alcohol in one can and residue in the others, defendant's performance on the nonstandardized tasks, and defendant's refusal to perform standardized field sobriety tests. After this summary, the State concludes: "The State submits that the above facts and circumstances known to the police officer at the time of the arrest were sufficient to warrant a person of reasonable caution to believe that defendant was driving under the influence of alcohol."

¶ 22 The State's argument necessarily assumes that defendant was not under arrest when Bailey took his keys and that Bailey did not need probable cause at *that* moment. That assumption, however, runs contrary to the circuit court's ruling. The court found that a reasonable person in defendant's position would not feel free to leave at the moment his keys were confiscated, that Bailey's actions therefore amounted to an arrest, and that Bailey thus needed probable cause. Furthermore, the State offers no argument and no citation to authority concerning whether Bailey's actions constituted an arrest or if he had probable cause to arrest at the time he took defendant's keys. Accordingly, the State has forfeited those arguments. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited and shall not be raised in the reply brief ***."); Ill. S. Ct. R. 612(b)(9) (eff. July 1, 2017) (applying Rule 341 to criminal appeals); *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29 (commenting, in finding that appellant forfeited argument pursuant to Rule 341(h)(7), that "[a] reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented; this court is not a repository into which an appellant may foist the burden of argument and research; it is neither the function nor the obligation of this court to act as an advocate or search the record for error").

¶ 23 Had the State made those necessary arguments, they would have been unavailing. For purposes of the fourth amendment, an individual is "seized" when an officer " 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "[T]he reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry*, 392 U.S. at 19. Reasonableness depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

¶ 24 Even if the confiscation of defendant's keys could be deemed reasonable based on the legitimate public interest in officer safety, Bailey's actions afterward are significant. Rather than merely taking those keys to prevent defendant from speeding away, Bailey used them to unlock defendant's vehicle so that he could conduct a search.

¶ 25 "[L]aw enforcement officers may undertake a warrantless search of a vehicle if there is probable cause to believe that the automobile contains evidence of criminal activity that the

officers are entitled to seize." *People v. James*, 163 Ill. 2d 302, 312 (1994). Where an item is seen in plain view, it must be " 'immediately apparent' " that the object is contraband or evidence of a crime before the object's presence will establish probable cause for a search. *Texas v. Brown*, 460 U.S. 730, 737 (1983) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971)); see also *People v. Nadermann*, 309 Ill. App. 3d 1016, 1020 (2000) ("[T]he so-called 'automobile exception,' provides that a warrantless search of an automobile is reasonable where the police have probable cause to believe that the vehicle contains contraband.").

¶ 26    Here, it was not immediately apparent to either Bailey or Ponzi that defendant's vehicle contained any contraband. While Ponzi initially testified that he noticed multiple cans of alcoholic beverages on defendant's backseat floorboard, he then admitted that he could only actually read one larger can, labeled "Straw-Ber-Rita." Further, there was no testimony provided as to whether Ponzi could determine if *that* can was open. Ponzi only testified that he "could tell that—at least the one was open." It is unclear if "the one" can to which Ponzi was referring was the Straw-Ber-Rita, the purple can Bailey had previously observed, or another of the cans.

¶ 27    Section 11-502 of the Illinois Vehicle Code states that "no driver may transport, carry, possess or have any alcoholic liquor within the passenger area of any motor vehicle upon a highway in this State except in the original container and with the seal unbroken." 625 ILCS 5/11-502(a) (West 2016). Contrary to Ponzi's answer on cross-examination (see *supra* ¶ 15), section 11-502(a) turns on the actual presence of alcohol, not merely the container. Ponzi did not actually testify that he observed an open can that he knew to be one of an alcoholic beverage. More importantly, from Ponzi's vantage point outside defendant's vehicle, he had no way of knowing if any open can contained anything. Thus, the incriminating nature of the can was not immediately apparent, as would be required for the can alone to allow officers to search defendant's vehicle. *Brown*, 460 U.S. at 737.

¶ 28    We also note that none of Bailey's observations leading up to the point he entered defendant's vehicle contributed significantly to potential probable cause. As the circuit court itself noted, the presence of food remnants in defendant's beard is not at all relevant. Further, defendant's use of sunglasses and gum is not particularly telling, especially considering that defendant only began using those items after Bailey already had the opportunity to observe his eyes and breath. To that point, Bailey testified that defendant's eyes were not glassy or bloodshot and that he detected no odor of alcoholic beverages, either from defendant's breath or elsewhere. That defendant was apparently distracted by Bailey's intentional attempts to distract him is also not indicative of the commission of any crime. While Bailey did observe that defendant moved his hands slowly and seemed to stare through him, these vague and subjective observations could only contribute minimally to a conclusion that defendant was impaired. Such observations were even less relevant to the question of whether the can in defendant's backseat actually contained any alcoholic liquor. In sum, the totality of Bailey's and Ponzi's observations up to that point, including the potentially empty alcoholic beverage can, did not rise to the level of probable cause allowing them to enter defendant's vehicle without a warrant.

¶ 29    In closing, we recognize that the State raises an additional argument for the first time in its reply brief. Citing the circuit court's comments in denying the State's motion to reconsider, the State argues that the court's ruling was "legally incorrect." The State contends that the court's

observation that Bailey changed the nature of the stop (see *supra* ¶ 17) is a reference to an outdated requirement from the second prong of *Terry*, 392 U.S. 1, which was no longer applicable at the time of the traffic stop. See *Harris*, 228 Ill. 2d at 238-40. The State contends that this ruling alone requires remand.

¶ 30 Initially, the State has forfeited this argument, having not raised it in its initial brief. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Substantively, the State's argument is also inaccurate. The circuit court's references to the changing nature of the stop occurred only at the hearing on the State's motion to reconsider. The court repeatedly made clear, both at the actual hearing on defendant's motion to suppress and later at the hearing on the State's motion, that it was suppressing the evidence because (1) Bailey's seizure of defendant's keys was tantamount to an arrest and (2) Bailey lacked probable cause at that time. Finally, and most importantly, a reviewing court is concerned with the circuit court's judgment, not its reasoning, and can therefore affirm on any basis found in the record. *E.g.*, *People v. Wuckert*, 2015 IL App (2d) 150058, ¶ 18.

¶ 31                                    III. CONCLUSION
¶ 32 The judgment of the circuit court of Will County is affirmed.

¶ 33 Affirmed.